VALENTI LAW APC
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
10174 Austin Drive #1116
Spring Valley, CA 91979
Phone: (619) 540-2189

Attorney for Denise Reynaga and Charlene Anderson

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE REYNAGA AND CHARLENE ANDERSON, <br><br><br> Plaintiffs, <br><br> vs. <br><br><br> SOFREH INC; RAUL PADILLA; ELIZABETH PADILLA; and DOES 1-10, <br><br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR: <br><br> DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq.*) <br><br> DEMAND FOR JURY TRIAL |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

*"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiffs DENISE REYNAGA and CHARLENE ANDERSON (hereinafter referred to as "Plaintiffs") complains of SOFREH INC, a California corporation; RAUL PADILLA as an individual; ELIZABETH PADILLA, as an individual; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I.    PARTIES

1.      Plaintiff Denise Reynaga is a California resident and a qualified physically disabled person. Ms. Reynaga has spina bifida and uses a wheelchair for mobility.

2.      Plaintiff Charlene Anderson is a California resident and a qualified physically disabled person. Ms. Anderson had an amputation on her right foot as well as cardiac issues. She uses a walker and a wheelchair for mobility.

3.      Plaintiffs are proud of their independence and of empowering other disabled people to be independent.

4.      Defendants SOFREH INC, RAUL PADILLA, ELIZABETH PADILLA, and DOES 1-10, are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

5.      Plaintiffs do not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and

alleges a joint venture and common enterprise by all such Defendants. Both Plaintiffs are informed and believe that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiffs will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

6.      Defendants own and owned the property located at 4701 E 3rd St, East Los Angeles, CA 90022 ("Subject Property") at all relevant times.

7.      Defendants operate and operated a restaurant doing business as SOFREH ("restaurant"), located at the Subject Property, at all relevant times.

8.      Plaintiffs allege that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II.    JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

10.      Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

11.      Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

### III.    FACTS

12.    Ms. Reynaga uses a wheelchair for mobility. Spina bifida also causes her to have impaired bladder and bowel control.

13.    Ms. Anderson uses a walker and a wheelchair for mobility.

14.    Defendants' business is open to the public, a place of public accommodation, and a business establishment.

15.    Ms. Reynaga and Ms. Anderson went to Sofreh on November 12, 2025. Because of Ms. Reynaga's disability, she needed to use the restroom urgently. Plaintiffs asked an employee where the restroom was and were told they were only allowed to use the restroom if they bought something. They were also told that the restroom was not accessible.

16.    Ms. Reynaga explained that she could get out of her wheelchair and walk a few steps if needed. Sofreh's employee still refused to allow Ms. Reynaga and Ms. Anderson access to the restroom unless they bought something first. Plaintiffs were willing to make a purchase, but looked at the counter and saw that it was much too high. There was also no accessible way to reach the dining area since it was up a six inch or more step. Feeling unwelcome and facing numerous accessibility barriers, they decided to waste no more time trying to access the restaurant's restroom and left.

17.    Because of this entirely preventable barrier, Ms. Reynaga and Ms. Anderson did not have full and equal access to Sofreh.

18.    This lawsuit is the result of Defendants' disregarding their accessibility obligations under the law.

19.    During Plaintiffs' visit, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

20.    Ms. Reynaga and Ms. Anderson encountered barriers that interfered with and denied Plaintiffs the ability to use and enjoy the goods, services,

privileges, advantages, and accommodations offered by Defendants at the Subject Property.

21.    These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2022 CBC").

22.    There are two possible routes to the main entrance of Sofreh, neither of which are accessible. The first route has a set of two stairs which are impossible for a wheelchair user to navigate.

23.    The second route has an approximately seven-foot concrete ramp which has no handrails available. This ramp also makes a 90-degree turn at the top of the ramp with no ramp run available. The ramp has a change of direction without a clear landing with the required space of 60 inches x 60 inches.  2010 ADA §206; 2010 ADA §403.4; 2010 ADA §405.7; 2010 ADA §405.7.4; 2010 ADA §505.1; 2010 ADA §505.2; 2022 CBC 11B-206; 2022 CBC 11B-302; 2022 CBC 11B-403.4; 2022 CBC 11B-505.1; 2022 CBC 11B-505.2; 2022 CBC 11B-405.7; 2022 CBC 11B-405.7.4; 28 C.F.R. §36.211(a); 2022 CBC 11B-108.




 

24.     Defendants also do not provide an accessible transaction counter for use with persons in wheelchairs like Plaintiffs. Transaction counters for patrons visiting the store are among the facilities, privileges advantages, and accommodations offered by Defendants. When a business provides facilities such as a sales or transaction counter, it must provide an accessible sales or transaction counter. Sofreh has a sales counter where it handles its transactions with customers. However, Defendants failed to provide an accessible sales counter on the outdoor patio.  The transaction window section of the counter measures between 42 inches to 44 inches high. There is no lowered, 36-inch portion of the sales counter for use by persons in wheelchairs to conduct transactions. 2010 ADA §904.4, 2010 ADA §904.4.1; 2022 CBC 11B-904.4, 2022 CBC 904.4.1.

25.     There is no accessible route from the outdoor patio dining area to the semi-enclosed patio dining area. There is an approximately 5-inch step with no ramp or lift provided. This creates an access barrier for customers who use

wheelchairs such as Plaintiffs. 2010 ADA §226.1; 2010 ADA §306.2.1; 2010 ADA §306.2.3; 2010 ADA §902.2; 2022 CBC 11B-226.1; 2022 CBC 11B-226.2; 2022 CBC 11B-306.2.1; 2022 CBC 11B-306.2.3; 2022 CBC 11B-902.2.

 



26.     Sofreh has two dining areas available for customers to use. There is an outdoor patio area with three tables and a semi-enclosed dining area with five tables.

27.     None of the outdoor patio tables or the semi-enclosed dining area are accessible to a person in a wheelchair. Where dining surfaces are provided for the consumption of food and drink, at least 5% of those must be accessible in each separate seating area. It is not sufficient that there be an accessible table in one seating area if other separate seating areas do not have an accessible table; such a scenario essentially relegates disabled patrons to a segregated area. There are minimum and maximum height requirements for an accessible dining table, as well as minimum dimensions for the clearance underneath so that the legs and toes of a person in a wheelchair can fit under the table. In particular, the required depth for toe clearance under an accessible table is a minimum of 17 inches. For example, the outdoor patio tables have a toe clearance of only 12.5 inches.  No table anywhere in the restaurant complies with these requirements. 2010 ADA §226.2010 ADA §306.2.3; 2010 ADA §902; 2022 CBC 11B-226.1; 2022 CBC 11B-306.2.3; 2022 CBC 11B-902.

28.     There are no accessible routes within many areas of the restaurant. The spacing between tables creates routes as narrow as 12 inches when the seats are occupied making it difficult or impossible for wheelchair users to navigate. Accessible routes are required to be a minimum of 36 inches wide. ADA 2010 §304; ADA 2010 §305; ADA 2010 §308; ADA 2010 §403; CBC 11B-304; CBC 11B-305; CBC 11B-308; CBC 11B- 403.

29.     There is no accessible route from the outdoor patio dining area to the restroom. There is an approximately 5-inch step, a locked gate which an employee must unlock for a customer to gain access to the restroom, and then a step leading down to the restroom to an employee break area which finally leads to a locked restroom. These steps have no ramp or lift provided for customers using a

1  wheelchair such as Ms. Reynaga and Ms. Anderson. 2010 ADA §226.1; 2010

2  ADA §306.2.1; 2010 ADA §306.2.3; 2010 ADA §902.2; 2022 CBC 11B-226.1;

3  2022 CBC 11B-226.2; 2022 CBC 11B-306.2.1; 2022 CBC 11B-306.2.3; 2022

4  CBC 11B-902.2.







30.     Where restrooms are provided, each restroom must be accessible. 2010 ADA §213.2; 2022 CBC 11B-213.2. Among other requirements, a restroom with toilet compartments must include at least one such compartment with sufficient width and maneuvering space for a wheelchair user to transfer to and from the toilet. 2010 ADA §604.3.1, §604.8; 2022 CBC 11B-604.3.1, 11B-604.8.

31.     However, the unisex restroom's entrance door has only 22.5 inches of clear door space. Defendants have chosen to install moveable shelving to store the restaurant's cleaning supplies which narrows the maneuverable space in the restroom rendering it inaccessible to wheelchair users.  2010 ADA §404.2.3.; 2010 ADA §404.2.4.; 2022 CBC 11B-404.2.3; 2022 CBC 11B-404.2.4.

32.     Accessible bathroom doors are required to have accessible door hardware. Defendants have chosen to install two sets of inaccessible restroom door hardware. There is a doorknob and a grab and twist lock rather than the type of accessible door hardware required under the ADA. Accessible hardware is commonplace at virtually every other business. This makes it difficult to open the door and enter the restroom. 2010 ADA §309.4; 2010 ADA §404.2.7; 2022 CBC 11B-213.2; 2022 CBC 11B-309.4.

33.     Soap dispensers are required to be no more than 48 inches high. The soap dispenser measures greater than the 48 inches allowed by the ADA. 2010 ADA §606.1; 2022 CBC 11B-606.1; 2010 ADA §308; 2022 CBC 11B-308.

34.     The paper towel dispenser in the unisex restroom was mounted so that its highest operable part was greater than 48 inches above the finish floor and inaccessible to wheelchair users. The paper towel dispenser is currently 51 inches high. 2010 ADA §606.1; 2022 CBC 11B-606.1; 2010 ADA §308; 2022 CBC 11B-308.

35.     The restroom's sink pipes are wrapped to prevent burning contact; however, the protective cladding was not fixed in place and would not protect knees from scalding if a person in a wheelchair was able to access this restroom.

Restroom sink pipes must be completely wrapped to avoid burning contact. 2010 ADA §606.5; 2022 CBC 11B-606.5.

36.    The minimum clear floor space in a compliant bathroom is 60 square inches. However, Defendants have placed moveable shelving and storage racks in the restroom which create access barriers to the sink, paper towel, and soap dispensers. For example, the width of the clear space between the moveable shelving and the sink was only 28.5 inches. This leaves less than the required clear space required and renders the restroom inaccessible to wheelchair users. 2010 ADA §603.2.1; 2022 CBC 11B-603.2.1.

37.    Defendants have failed to maintain accessible features. 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

 

 

38.    The barriers existed during Plaintiffs' visit to the Subject Property. Both Plaintiffs personally encountered these barriers.

39.    These inaccessible conditions and barriers denied Plaintiffs full and equal access and caused them difficulty, discomfort, and embarrassment. Because of the lack of compliant routes they had difficulty making their way to and from the entrance of the restaurant. Because of the lack of a compliant transaction counter and the policy of requiring a purchase to be allowed to use the restroom, Ms. Reynaga and Ms. Anderson felt unwelcome, unwanted, and disrespected by the staff of Sofreh. Even if they had made a purchase they wouldn't have been able to safely navigate to the restroom or be able to use the inaccessible facilities. Plaintiffs felt embarrassed and degraded as they left Sofreh.

40.    These barriers denied the Plaintiffs full and equal access due to their disabilities because, *inter alia*, they caused both Plaintiffs anxiety, difficulty, discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

41.    The Plaintiffs intend to return to the Subject Property in the near future. Plaintiffs are currently deterred from returning because of the knowledge of the barriers to equal access that relate to both Plaintiff's disabilities which continue to exist at Defendants' public accommodation facilities.

42.    Plaintiffs have Article III standing because they visit the area regularly and intend to move there in the near future. The Subject Property is conveniently located and in the general area where they live, shop, go to medical appointments, visit their family and friends, recreate, and do other normal activities in their daily life. Ms. Reynaga and Ms. Anderson intend to return to the Subject Property in the near future to enjoy a meal, after the accessibility barriers alleged herein have been removed.

43.    Plaintiffs allege that Defendants knew that the barriers prevented equal access. Plaintiffs further allege that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

44.    Publicly available evidence indicates that the front area of the property has been subject to repeated new construction and major alterations.

45.    Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

46.    The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2022 CBC 11B-108 as follows:

Features for accessibility must be permanently functional, unobstructed and may not be removed.  It is not sufficient to provide features such as

> accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

47.    Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

48.    To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including the Plaintiffs of important civil rights.

49.    On information and belief, Plaintiffs allege that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

50.    The barriers to access are listed above without prejudice to Plaintiffs citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as these Plaintiffs, are barriers the Plaintiffs may encounter when they return to the premises. All public accommodations must be brought into compliance with all applicable federal and state accessibility requirements.

/ /

/ /

# FIRST CAUSE OF ACTION

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq.*)

(Against All Defendants)

51.    Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

52.    More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

53.    In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

54.    In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

55.     As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

56.     The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

57.    Plaintiffs are both qualified individuals, each with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

58.    The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

59.    The removal of each of the physical and policy barriers complained of by Plaintiffs as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA.  Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

60.    On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiffs and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiffs on the basis of their disabilities, thus wrongfully denying to Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

61.    Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiffs the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

62.    Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

### SECOND CAUSE OF ACTION

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq*.)

(Against All Defendants)

63.    Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

64.    California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

65.    California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

66.    California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

67.    California Civil Code §52 provides that the discrimination by Defendants against Plaintiffs on the basis of her disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

68.    Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

69.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52.  Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

70.    The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

71.    The discriminatory denial of equal access to and use of the described public facilities caused both Plaintiffs difficulty, discomfort, and embarrassment.

72.    As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiffs in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to both Plaintiffs, according to proof.

## PRAYER FOR RELIEF

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, both Plaintiffs prays judgment against Defendants, and each of them, as follows:

1.    Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable

by Plaintiffs and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2.      Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3.      Award to Plaintiffs all appropriate damages, including but not limited to actual and statutory damages according to proof;

4.      Award to Plaintiffs all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5.      Grant such other and further relief as this Court may deem just and proper.


DATED: February 11, 2026                **VALENTI LAW APC**


                                        By:  */s/ Matthew D. Valenti*
                                        _____
                                            Matthew D. Valenti
                                            Attorney for Plaintiffs
                                            Denise Reynaga and
                                            Charlene Anderson

1

**JURY DEMAND**

2

3         Plaintiffs hereby demand a trial by jury for all claims and issues for which a

4    jury is permitted.

5

6

7    DATED: February 11, 2026                **VALENTI LAW APC**

8

9                                      By:   */s/ Matthew D. Valenti*
                                            _____
10                                          Matthew D. Valenti
                                            Attorney for Plaintiffs
11                                          Denise Reynaga and
                                            Charlene Anderson
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28